UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
Vito Saladino and AnnMarie Saladino,
                    Plaintiffs,

                - against -

Stewart & Stevenson Services, Inc.,
Stewart & Stevenson Technical
Services, Inc., Stewart & Stevenson
Tug,
                    Defendants.
----------------------------------------X
Stewart & Stevenson Services, Inc.,
Stewart & Stevenson Technical
Services, Inc., Stewart & Stevenson
Tug,
        Third-Party Plaintiffs,

                - against -

American Airlines, Inc.,
        Third-Party Defendant.
----------------------------------------X

01-CV-7644 (SLT)(JMA)

**MEMORANDUM OPINION AND ORDER**

**TOWNES, United States District Judge.**

Plaintiffs, Vito Saladino and AnnMarie Saladino (collectively, "plaintiffs"),[1] bring this diversity action to recover for injuries Saladino sustained on January 17, 1999, when the unsecured hood of the baggage tractor in which he was riding as a passenger sprung up and struck him in the head, rendering him a quadriplegic. Defendants, Stewart & Stevenson Services, Inc., Stewart & Stevenson Technical Services, Inc., and Stewart & Stevenson Tug, LLC (collectively, "S & S"), manufactured the baggage tractor at issue. S&S impleaded third party defendant American Airlines ("AA"), who was Saladino's employer at the time

---

[1] Unless otherwise indicated, all references to "plaintiff" or "Saladino," in the singular, are references to Mr. Saladino.

of his injuries, alleging that AA's negligence was a contributing cause of plaintiff's injuries.

Plaintiffs' failure to warn claim and derivative loss of consortium claim were tried before a jury between November 12 and November 26, 2008. Although the jury found Saladino negligent, it did not find him to be a substantial factor in the accident and assigned him no fault. The jury assigned S&S 30% of the fault and assigned AA 70% of the fault. On March 30, 2010, this Court denied S&S' motion for a directed verdict and/or a judgment not withstanding the verdict, and also denied AA's motion for judgment as a matter of law. Now before this Court are (1) S&S' motion for reconsideration of the Court's order of March 30, 2010[2] and (2) AA's motion for reconsideration of the Court's order of March 30, 2010. For the reasons set forth below, the motions for reconsideration are denied.

## BACKGROUND

The facts and procedural history of this case have been stated in prior opinions and it is unnecessary to repeat them here. *See, e.g. Saladino v. Stewart & Stevenson Services, Inc.*, --- F.Supp.2d ----, 2010 WL 1292264, No. 01 CV 6744 (E.D.N.Y. Mar. 30, 2010).

## DISCUSSION

---

[2] S&S also moves for a Certificate for Interlocutory Appeal in the event that its motion for reconsideration is denied. The Court already denied this request in an order dated April 12, 2010.

*Applicable Law*

S&S does not specify whether it brings its motion for reconsideration pursuant to Federal Rule of Civil Procedure 59(e) or Local Rule 6.3. AA brings its motion pursuant to both Fed. R. Civ. P. 59(e) and Local Rule 6.3. The standards governing Rule 59(e) and Local Rule 6.3, however, are the same. *See Yurman Designs, Inc. v. A.R. Morris Jewelers*, 60 F.Supp.2d 241, 243-244.

"The decision to grant or to deny a Rule 59(e) motion for reconsideration rests with the sound discretion of the District Court." *United States v. Eubanks*, No. 92 CR 392, 1999 WL 1261256, at *5 (S.D.N.Y. Dec.27, 1999) (internal citation omitted). A motion for reconsideration under Local Civil Rule 6.3 "will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked-matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). "Reconsideration is also appropriate if there is an intervening change of controlling law, new evidence, or the need to correct a clear error or prevent manifest injustice." *New York v. Locke*, No. 08-CV-2503, 2009 WL 2413463, at *2 (E.D.N.Y. Aug. 3, 2009). "A motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue already decided." *Shrader*, 70 F.3d at 257.

*S&S' Motion for Reconsideration*

*Latent Danger*

S&S argues that this Court's March 30, 2010 opinion departs from and contradicts rulings made by the Court at trial. S&S contends that the Court directed the litigants to focus only on the BT-345 tractor involved in Saladino's accident. S&S then states that, "[t]he [t]ractor that Mr. Saladino was riding in at the time of his accident was sold to [] AA with a steel cab," so it is now contradictory for the Court to consider a scenario where the BT-345 tractor did not have a steel cab attached. (S&S Mot. Recons. p. 6). This argument is not accurate. In January 1990, AA ordered and received 10 BT-345 tractors *without cabs* from S & S. (Ex. P 40B).³ Four of these tractors were designated for John F. Kennedy Int'l Airport ("JFK Airport" or "JFK"). Cabs were subsequently ordered from a different company for these tractors in March 1990. (Ex. P 40B). The cabs were installed on the tractors by AA workers. *Id.* Therefore, the tractor at issue here was not sold to AA *with* a steel cab. So, it is not a departure to discuss or allow evidence about this BT-345 tractor without a cab.

S&S continues this line of reasoning, again arguing that

---

³ "Ex." refers to the exhibits admitted at trial. A "P" notation before the exhibit number refers to plaintiffs' exhibit and a "D" notation before the exhibit number refers to defendants' exhibit.

evidence about this tractor without a cab should not be permitted. S&S arguest that, "[t]he Court ruled during the trial that the fact that the tractor did not have a cab at the time of the accident was 'irrelevant.' The Court also stated, 'We are not going to talk about tractors without cabs, we're going to talk about this particular tractor.'" (S&S Mot. Recons. p. 6). The Court made these particular statements when granting defendants' motion in limine to preclude plaintiffs' warnings expert, Dr. Erlich, from testifying. (Tr. pp. 12-13).[4] This was not intended to eliminate all talk of tractors without cabs, but rather to limit evidence of tractors to this particular tractor which, as stated above, at the time AA bought it and at the time of the accident did not have a cab.

Next, S&S contends that the Court inaccurately recited the facts with regard to the rotation of the hood of this tractor, specifically that with the cab on, the hood of the tractor was incapable of rotating a full 180 degrees. S&S is incorrect. The hood of this particular tractor, with or without a cab, is capable of rotating 180 degrees. The cab, however, prevents the hood from completing its full rotation. But, it is important to note, and defendants pointed out numerous times at trial, this is not a design defect case. The issue is whether there was a failure to warn of a latent danger. And here, the latent danger

---

[4] "Tr." refers to the trial transcript.

was that the hood of the tractor, "could open 180 degrees once the two side latches were unlatched . . . [and because there was no cab, the hood] could enter the driver/passenger area of the vehicle, and strike an individual seated in that area." (Mem. Op. Order March 30, 2010).

S&S also contends that the Court's description that the cab was removable "at any time" mischaracterizes the facts. S&S argues that the hood was not removable at any time since the cab was bolted onto the tractor, and, as Dr. Manning[5] testified, had the cab been on the tractor at the time of the accident, the hood would have hit the cab instead of the plaintiff. Dr. Manning further testified that no warning would have prevented this accident. S&S argues that Dr. Manning's testimony was uncontroverted at trial and therefore should be accepted by the Court. "The rule has been stated 'that if the court admits the testimony, then it is for the jury to decide whether any, and if any what, weight is to be given to the testimony.' *Spring Co., v. Edgar*, 99 U.S. 645, 658, 25 L.Ed. 487. '...[T]he jury, even if such testimony be uncontradicted, may exercise their independent judgment.' *The Conqueror*, 166 U.S. 110, 131, 17 S.Ct. 510, 518, 41 L.Ed. 937." *Sartor v. Arkansas Natural Gas Corp.*, 321 U.S. 620, 627-28, 64 S.Ct. 724, 88 L.Ed. 967 (1944). Although S&S correctly stated that this testimony is relevant to the

---

[5] Dr. Manning was S&S's warnings expert.

"foreseeability of the risk of injury," (Tr. 34), the jury clearly did not did credit Dr. Mannings testimony. Instead, the jury credited Saladino's testimony that had a warning been posted on the tractor not to drive it without a cab for fear that the hood could rotate into the passenger compartment and injure the driver or passenger, he never would have ridden on it without its cab attached.

### Condition of the Baggage Tractor and Foreseeability

S&S's argues that driving the tractor without a hood was not a reasonably foreseeable unintended use of the tractor is that "the [t]ractor was manufactured and sold to AA with a steel cab." (S&S Mot. Recons. p. 9). This premise, as stated in the Court's March 30, 2010 Memorandum Opinion and Order is incorrect. As mentioned earlier, the tractor was sold to AA by S&S without a cab. A cab was ordered a few months later, from a different company altogether. So, the tractor was not sold to AA *with* a cab.

As for S&S's legal arguments, all were addressed in the Court's March 30, 2010 Memorandum Opinion and Order. *See Shrader*, 70 F.3d at 257 ("A motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue already decided."). S&S continues to argue that the issue here is whether the use of the tractor in a "disassembled state" was foreseeable. S&S states that there were many parts of the

luggage tractor missing at the time of the accident. The parts they claim were missing at the time accident were really the parts that AA personnel removed during the refurbishing process in the months prior to the accident. Photographic evidence at trial showed, however, that many of the missing parts, including, but not limited to, the engine cover and the PONY plates, were on the vehicle at the time of the accident. Someone obviously "reassembled" the tractor. Furthermore, it was foreseeable not only that the tractor could be driven without a hood, because it was sold without a cab, but also that the hood could rotate 180 degrees without the cab present and hit persons sitting in the passenger compartment because both S&S and AA knew of the McCary Accident and because AA notified S&S of this problem at the time AA placed its order for the BT-345 tractor.

### *AA's Motion for reconsideration*

#### *Knowledgeable User*

AA argues that Saladino was a knowledgeable user and therefore there was no need to warn the plaintiff of the danger that caused his injury. AA's argument, however, is the same argument considered and rejected the by the Court in the March 30, 2010 Memorandum Opinion and Order, and therefore is not appropriately brought in a Motion for Reconsideration. *See, supra, Shrader*, 70 F.3d at 257. And, despite ample opportunity, AA never offered any evidence at trial in an effort to prove that

AA trained its employees about any dangers of operating a cabless BT-345 tractor, despite alerting S&S to the same latent danger.

### Failure to Warn, Heeding the Warning

AA also argues that Saladino would not have heeded a warning had one been given. This argument, too, is the same argument considered and rejected the by the Court in the March 30, 2010 Memorandum Opinion and Order, and therefore is not appropriately brought in a Motion for Reconsideration. *See, supra, Shrader*, 70 F.3d at 257. The crux of AA's argument is that in New York State, "the plaintiff bears the burden [of proving] that the user of the product would have read and heeded the warning had one been given." *Raney v. Owens-Illinois, Inc.*, 897 F.2d 94, 95 (2d Cir. 1990) (Def. AA's Mot. Recons. P. 12). The only evidence offered on this issue at trial was by the plaintiff. This Court did not presume that the plaintiff would have heeded the warning. Saladino testified he would have heeded the warning had one been given. Therefore, the plaintiff carried his burden and the jury had sufficient evidence to determine that the plaintiff would have heeded the warning.

### Certification for Intermediate Interlocutory Appeal

The Court considered the request for Certification for Intermediate Interlocutory Appeal and subsequently denied that request on April 12, 2010.

## CONCLUSION

For the reasons set forth above, S&S's and AA's motions for reconsideration are denied. The request for a Certificate for Interlocutory Appeal is denied.

The Clerk is directed to transmit a copy of the within to the parties and the Magistrate Judge.

SO ORDERED.

Dated :   Brooklyn, New York
          June 29, 2010

                                    s/ SLT
                                    United States District Judge